[Cite as *Colaianni Constr., Inc. v. Indian Creek Local School Dist.*, 2016-Ohio-8156.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| COLAIANNI CONSTRUCTION, INC., | ) | CASE NO. 16 JE 0009 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| INDIAN CREEK LOCAL SCHOOL DISTRICT, | ) | |
| | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:   Civil Appeal from the Court of Common Pleas of Jefferson County, Ohio Case No. 15CV514

JUDGMENT:   Reversed.

APPEARANCES:

For Plaintiff-Appellee:

Atty. Donald Gregory
Atty. Michael Madigan
Atty. Timothy Kelley
Kegler Brown Hill & Ritter Co. LPA
65 East State Street, Suite 1800
Columbus, Ohio 43215

For Defendant-Appellant:

Atty. Christopher McCloskey
Atty. Tarik Kershah
Atty. Desmond Cullimore
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  December 12, 2016

ROBB, J.

**{¶1}** Defendant-Appellant Indian Creek Local School District appeals the decision of the Jefferson County Common Pleas Court granting the petition to compel arbitration filed by Plaintiff-Appellee Colaianni Construction, Inc., the general contractor on the school district's construction project. The school district contends the arbitration provision in R.C. 153.63(B) does not apply because the State of Ohio is the public owner of the construction project rather than the school district. This argument has merit. As the public owner is the State of Ohio, the remedy is not arbitration under R.C. 153.63(B). To the contrary, R.C. 153.63(C) directs the contractor to file an action in the court of claims. Accordingly, the trial court should have dismissed the case for lack of jurisdiction instead of compelling arbitration. The remaining arguments are moot. The Trial Court's decision is reversed and remanded.

<u>STATEMENT OF THE CASE</u>

**{¶2}** The Ohio School Facilities Commission agreed to co-fund the construction of a new middle school facility for the school district. Colaianni Construction was the successful bidder for general contractor on the project. On October 13, 2010, the construction contract was executed by the president and the treasurer of the school district for the "State of Ohio by and through the [school district]." It was thereafter approved by the commission.

**{¶3}** The school district began occupying the facility in January 2013. Apparently, a subsurface drainage problem arose in the parking lot. A consultant recommended the addition of a geotextile and underdrain system. The contractor opined this demonstrated defective design by the architect. The contractor's request for release of the retainage from escrow was unsuccessful.

**{¶4}** On December 10, 2015, the contractor filed a "Complaint/Petition to Compel Arbitration" and sought court-appointment of an arbitrator. The contractor said the school district was withholding escrowed funds even though the construction project was complete. The contractor asserted the right to arbitration under R.C. 153.63(B) due to a disagreement with the school district as to the conditions under

which escrow money was to be paid. One of the attachments to the filing was a "Consent to Deposit of Retained Funds" signed by the contractor on October 10, 2010; it allowed the school district's treasurer to deposit funds retained from the contract into an escrow account at Chase Bank when the contract was 50% complete.

{¶5} The school district filed a motion for a more definite statement and a motion to continue the December 29, 2015 hearing. The school district noted the consent to deposit did not identify the public owner referred to in R.C. 153.63(A), urging the operative document identifying the public owner was the actual contract referenced in the consent to deposit. The school district commented that if the construction contract were attached, then it would be clear the school district was not the public owner but was merely an agent for the state. The motion further asserted the common pleas court lacked jurisdiction as any claim under R.C. 153.63 had to proceed against the state under division (C) which directs the contractor to file an action in the court of claims.

{¶6} On December 18, 2015, the trial court granted the motion for a more definite statement due to the failure to attach the construction contract to the pleading. The contractor was provided 14 days to amend the pleading. The hearing was reset for January 11, 2016. The contractor filed an amended complaint/petition to compel arbitration on December 31, 2015. The construction contract was attached. The contractor emphasized the contract identified the school district, not the state, as the party involved in the escrow agreement.

{¶7} On January 6, 2016, the school district submitted a motion to dismiss for lack of subject matter jurisdiction under Civ.R. 12(B)(1), arguing: the owner of the construction project was the state; the school district acted in the capacity as an agent for the state; the arbitration provision in R.C. 153.63(B) does not apply; where the state is the public owner, R.C. 153.63(C) applies to disputes over conditions

under which money is to be paid from the escrow account; and division (C) requires the contractor to file an action in the court of claims.[1]

**{¶8}** On January 8, 2016, the school district filed a motion to continue the hearing until the jurisdictional issue was fully briefed and until the court ruled on its dismissal motion. The school district said it was not in a position to present its defenses until that time, noting jurisdiction was not its only available defense.

**{¶9}** Also on January 8, the contractor responded to the motion to dismiss and objected to a continuance. Initially, the contractor stated the action was not subject to the Rules of Civil Procedure as a petition to compel arbitration is a special statutory proceeding. The contractor pointed out: R.C. 153.63(B) directs the contractor to apply for a decision by arbitration under the procedures in Chapter 2711, and R.C. 2711.03(A) requires five days' notice for a petition to compel arbitration, which is intended to be an expeditious process. The contractor reiterated it was the school district withholding the funds in the escrow account.

**{¶10}** The hearing on the petition to compel arbitration proceeded on January 11, 2016. Oral arguments were presented. The contractor pointed to a statute requiring the retainage held in escrow to be paid within thirty days after occupancy of the building. The contractor urged the dispute was with the school district due to its refusal to release the escrow funds, emphasizing the contract with the state provided the school district, the contractor, and the bank would be parties to the escrow agreement.

**{¶11}** The contractor did not have a copy of the escrow agreement but provided a sample escrow agreement believed to be standard. The contractor then presented testimony of its project manager. He identified various documents and testified: the contractor asked the school district to release the funds held in escrow; the funds were due when the project was completed; the school has been occupied since January 2013; and the school district refused to release the funds.

---

[1] The clerk of courts refused to time-stamp the motion to dismiss and returned it to the school district for failing to comply with a local rule requiring a hearing date to be included in the motion. The school district attached the motion to a "notice of filing" on January 15, 2016, stating: "Since the motion has already been heard and resolved, this notice is only for the purpose of completing the record."

**{¶12}** The school district recited R.C. 153.63(A) refers to "money which is due from the public owner referred to in section 153.12 of the Revised Code under a contract entered into under this chapter or entered into under other applicable sections." As required by R.C. 3318.10, the contract was "made in the name of the state and executed on its behalf by the president and treasurer of the school district * * *." The school district concluded it disbursed money as an agent of the state, who owned the construction project.

**{¶13}** Alternatively, the school district asserted the alleged disagreement was not about "the conditions under which money is to be paid under this section * * *." It was suggested the contractor was attempting to add the word "performance" to the language in R.C. 153.63 concerning the conditions.

**{¶14}** At the end of the hearing, the court announced its decision to rule in favor of the contractor and compel arbitration. The court found this was not a general dispute under the construction contract but was a particular dispute as to the conditions for release of money under the escrow agreement. The court ordered the parties to submit names of arbitrators for the court or to agree on an arbitrator within ten days. The contractor's counsel was asked to prepare an order. The parties filed a list of proposed arbitrators. Proposed orders regarding findings of fact and conclusion of law were then submitted.

**{¶15}** On March 3, 2016, the trial court issued its decision compelling arbitration. The court found it had jurisdiction over the parties and the subject matter. The court concluded the school district was the public owner and there was a disagreement as to the conditions under which money is to be paid. The court declared: "Once the arbitrator is selected, this case shall be considered stayed pending arbitration 'and no court shall permit the maintenance of, an action in court for decision of the same issues sought to be determine in the arbitration application' as set forth in R.C. 153.63(B)."

**{¶16}** On March 7, 2016, the court issued findings of fact and conclusions of law. The court found: the school district took occupancy of the building in January 2013; the retainage was to be paid within 30 days of occupancy under R.C. 153.13;

the school district refused to pay the retainage then or upon the contractor's demand; the special conditions in the contract promised the retainage would be placed in an escrow account; the general conditions in the contract promised the funds would be deposited in an escrow account under agreement with the school district; and the contractor signed a consent for deposit of the retained funds. The court concluded division (B) of R.C. 153.63 was applicable since the school district was a public owner under that division and since the school district and the contractor disagree as to the conditions under which escrowed money is to be paid.

{¶17} The school district filed a timely notice of appeal. The contractor filed a motion to dismiss the appeal for lack of a final appealable order. On May 6, 2016, this court overruled the motion to dismiss, finding the trial court's judgment was a final appealable order.[2]

## CONTRACTUAL PROVISIONS

{¶18} The construction contract was "made and entered into by and between [the contractor] and the State of Ohio (the "State"), through the President and Treasurer of the [school district]" to be effective upon execution by the school district and approval by the commission. *See* Contract Form at Preamble. *See also* Contract Form at Signature Line (where the signatory is the State of Ohio "by and through" the school district). The contract and the rights thereunder are "governed by the laws of the State of Ohio and only Ohio courts shall have jurisdiction over any action or proceeding concerning the Contract and/or performance thereunder." Sec. 1.1.3.

{¶19} The construction contract then explains exactly what court applies to what situation. The common pleas court in the county where the project is located has "exclusive jurisdiction for any action or proceeding for any injunction or declaratory judgment concerning any agreement or performance under the Contract Documents or in connection with the Project." Sec. 1.1.3.1. *See also Friedman v.*

---

[2] *See also International Union of Operating Engineers, Local 18 v. Norris Bros. Co.*, 8th Dist. No. 101353, 2015-Ohio-1140, fn. 1, citing *Palumbo v. Select Mgmt. Holdings, Inc.*, 8th Dist. No. 82900, 2003-Ohio-6045, ¶ 14; *Russell v. RAC Natl. Prod. Serv., LLC*, 4th Dist. No. 14CA17, 2014-Ohio-3392, ¶ 13-15.

*Johnson*, 18 Ohio St.3d 85, 87, 480 N.E.2d 82, 84 (1985) (court of common pleas court has jurisdiction where state is sued for declaratory relief).  The Ohio Court of Claims has "the exclusive jurisdiction for an action or proceeding by the Contractor or the Contractor's surety for any money damages concerning any agreement or performance under the Contract Documents or in connection with the Project."  Sec. 1.1.3.2.  *See also Friedman*, 18 Ohio St.3d at 87 (where complaint also seeks damages, complaint must be brought against the state in the court of claims).

{¶20}  The contract further provides the contractor must correct any defective work, whether discovered before or after final completion; this duty extends for one year after final completion.  Sec. 2.16.  There is also a one-year warranty provided by the contractor.   Sec. 2.21.   The contractor must pay the costs and damages associated with correction of defective work; the school district "may deduct the costs and damages it incurs from payments then or thereafter due the Contractor."  Sec. 2.16.3.1.  *See also* Sec. 5.3.2.1.

{¶21}  In general, funds shall be paid within 30 days from approval of an application for payment.  Sec. 9.2.2.  Upon a contractor's application for payment, the architect and the construction manager may recommend to the school district and to the commission to withhold payment.   Sec. 9.6.1. The school district and the commission can decline to approve an application for payment or nullify a previous application to protect the school district or the commission from loss due to the contractor's failure to comply with contract documents, including defective work not remedied.  Sec. 9.6.2.1.  Upon final application for payment, such payment shall be made within 30 days from the date of approval by the construction manager, school district, and architect.  Sec. 9.7.2.  The making of final payment by the school district constitutes a waiver of all claims by the school district except those relating to unsettled claims against the contractor and those arising after contract completion, including defective work and failure to comply with any warranties.  Sec. 9.7.3.

{¶22}  All funds retained for the faithful performance of work shall be deposited in an escrow account in accordance with the terms and conditions provided in an escrow agreement executed by the contractor, the school district, and the bank.  Sec.

9.5.1. When the major portion of the work is occupied or in use, and there is no other reason to retain funds, upon request of the contractor, the funds retained in connection with the work shall be released from escrow and paid to the contractor, "withholding only that amount necessary to assure faithful compliance, in the sole discretion of the School District Board." Sec. 9.5.2. Funds in the escrow account shall be authorized for release to the contractor within 30 days of the school district's approval of a final application for payment and execution of the certificate of completion. Sec. 9.5.2.2.

{¶23} In addition to these general conditions of the contract, the special conditions related to bid instructions provide at Section 6.6.1:

> The Treasurer for the School District has established or will establish one or more interest-bearing accounts or funds for deposit of the amounts retained from each construction contract for the District's construction program, as required by the Ohio Revised Code. By submitting a bid, each bidder agrees that it accepts the arrangements made by the Treasurer and agrees these arrangements conform with the requirements stated in the Ohio Revised Code for deposit of amounts retained from construction contracts. If requested, the successful Bidder will execute any documentation requested by the School District Board for the purpose of depositing funds required to be retained by the School District Board under Articles 9 and 15 of the General Conditions. The successful Bidder acknowledges that the School District Board is not required to establish the account or fund for deposit of retainage from the construction contract and deposit retained amounts into that account or fund until the contract from which funds are being retained is 50% complete.

{¶24} Pursuant to this provision, the contractor was presented with a consent to deposit retained funds, which was signed by the contractor during the execution of the contract. This document provides:

Contractor consents to the deposit of the funds retained from the Contract into the account established or to be established by the School District Board's Treasurer with Chase Bank, which is an interest-bearing account; Contractor acknowledges that the deposit of funds retained from the construction Contract as required by the Ohio Revised Code will be made into the interest-bearing account when the Contract is 50% complete. Contractor agrees that the deposit of the retained funds by the School District Board Treasurer complies with the Ohio Revised Code Section 153.63.

## STATUTES

**{¶25}** The Ohio School Facilities Commission is an independent agency of the state (within the Ohio Facilities Construction Commission). It was created by R.C. 3318.30(A) to administer the provision of financial assistance to school districts for the acquisition or construction of classroom facilities. The commission may sue and be sued and enter into contracts in its own name. R.C. 3318.30(A). For purposes of R.C. 3318.10 through R.C. 3318.20, "school district" means: "a local, exempted village, or city school district as such districts are defined in Chapter 3311. of the Revised Code, acting as an agency of state government, performing essential governmental functions of state government pursuant to sections 3318.01 to 3318.20 of the Revised Code." R.C. 3318.01(D).

**{¶26}** If a proposed construction project is approved, the commission shall enter into a written agreement with the school district board for the construction and sale of the project. Pursuant to R.C. 3318.08, the agreement shall include the following pertinent provisions:

(F) Ownership of or interest in the project during the period of construction, which shall be divided between the commission and the school district board in proportion to their respective contributions to the school district's project construction fund; * * *

(J) Authorization of the school district board to advertise for and receive construction bids for the project, for and on behalf of the commission, and to award contracts in the name of the state subject to approval by the commission;

(K) Provisions for the disbursement of moneys from the school district's project account upon issuance by the commission or the commission's designated representative of vouchers for work done to be certified to the commission by the treasurer of the school district board;

(L) Disposal of any balance left in the school district's project construction fund upon completion of the project;

**{¶27}** Funds from both the commission and the school district board are to be placed into the school district's project construction fund. R.C. 3318.08(B); R.C. 3318.12(A) (the commission can transfer necessary amounts from time to time as may be necessary to pay obligations chargeable to the fund when due). The school district board's treasurer is to disburse funds from the construction fund only upon the approval of the commission or the commission's designated representative, who shall issue vouchers against the fund in such amounts and at such times as required by the contract for construction of the project. R.C. 3318.12(B)(1).

**{¶28}** When specifications have been approved by the school district board, the treasurer shall advertise bids. R.C. 3318.10. The school district board is to award the contract to the lowest responsible bidder subject to approval of the commission. *Id.* Or it can reject all bids and readvertise subject to approval of the commission. Additionally, R.C. 3318.10 mandates: "*Any contract made under this section shall be made in the name of the state and executed on its behalf by the president and treasurer of the school district board.*" (Emphasis added.)

**{¶29}** R.C. 3313.46, which is generally applicable to construction contracts of boards of education, also applies to the construction contract. R.C. 3318.10. Certain sections of Chapter 153 are cited in R.C. 3313.46. For instance, the board must prepare the plans as required by R.C. 153.10(A)(1)-(3); each bid must meet the

requirements of R.C. 153.54; listed bidding procedures must be followed, but "in all other respects," the award of the contract shall be pursuant to R.C. 153.12; and the board shall pay the contract price for the work pursuant to R.C. 153.13 and 153.14. *See* R.C. 3313.46(A)(1),(4),(6),(7).[3]

{¶30} R.C. 153.12(A) begins: "With respect to award of any *contract for the construction * * * of a public improvement made by the state*, or any county, township, municipal corporation, school district, or other political subdivision, * * * the award, and execution of the contract, shall be made within sixty days after the date on which the bids are opened." (Emphasis added.) This division further provides for apportionment of partial payments and the rate of payment during the stages of the contract. "The amounts and time of payments of any public improvements contract made by the state or any county, township, municipal corporation, school district, or other political subdivision * * * shall be governed by this section and sections 153.13 and 153.14 of the Revised Code." R.C. 153.12(A).

{¶31} Pursuant to R.C. 153.13, estimates of labor and material shall be completed at the time named in the contract for payment. Once the contract is 50% complete, all funds retained for the faithful performance of work shall be deposited in the escrow account designated in R.C. 153.63 and no further funds shall be retained. When the major portion of the project is substantially completed and occupied or in use or otherwise accepted, and there exists no other reason to withhold the retainage, the retained percentages held in connection with such portion shall be released from escrow and paid to the contractor. Funds remaining in the escrow account with accumulated interest shall be paid 30 days from the date of completion or the owner's acceptance or occupancy. R.C. 153.13 concludes by stating that such payments shall be in accordance with R.C. 153.63(A)(2).[4]

---

[3] R.C. 3313.46(A)(7) also states, "The contract shall be between the board and the bidders." As aforementioned and acknowledged by the parties, the more specific statute, dealing with *this commission* as owner, provides the *construction* contract shall be in the name of the state and executed on its behalf by the board's president and treasurer. R.C. 3318.10.

[4] *See also* R.C. 153.14, which provides that payment on approved estimates filed with the owner or its representative shall be made within thirty days. The contractor is entitled to extra interest, in addition

**{¶32}** Before turning to the cited statute, we return to R.C. 153.12, which concludes by stating:

> *If a dispute arises between the state and a contractor concerning the terms of a public improvement contract let by the state or concerning a breach of the contract*, and after administrative remedies provided for in such contract and any alternative dispute resolution procedures provided in accordance with guidelines established by the executive director of the Ohio facilities construction commission are exhausted, *the contractor may bring an action to the court of claims* in accordance with Chapter 2743. of the Revised Code.

(Emphasis added.) R.C. 153.12(B). Either party can ask the chief justice of the supreme court to appoint a referee or panel of referees to report to the court of claims in accordance with R.C. 2743.03(C)(3). *Id.*

**{¶33}** Based upon this statute, breach of contract cases have proceeded against the Ohio Schools Facilities Commission in the Court of Claims on contractors' claims of non-payment for construction of a municipal or local school. *See, e.g., J&H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. No. 13AP-732, 2014-Ohio-1963, ¶ 3-4 (where there was still a contract balance due at the time of trial); *Ohio Farmers Ins. Co. v. Ohio School Facilities Comm.*, 10th Dist. No. 11AP-547, 2012-Ohio-951, ¶ 2-3 (where the contractor asserted a claim for failing to remit contract balance and retainage amounts). *See also Synergy Grp., Inc. v. Ohio School Facilities Comm.*, Ct. of Claims No. 2012-05606 (where the contractor claimed the state failed to timely pay for base contract work and earned retainer and argued the state failed {via the school district} to deposit earned retainage into an escrow account; the state counterclaimed, and the case settled).

**{¶34}** Finally, the main statute in dispute in this case is R.C. 153.63. Division (A) explains:

---

to the interest earned in the escrow account, upon the failure of the owner or its representative to make such payments within thirty days, or upon an unauthorized withholding of retainage.

> Any money which is due from the public owner referred to in section 153.12 of the Revised Code under a contract entered into under this chapter or entered into under other applicable sections of the Revised Code for the construction * * * of a public improvement shall, on the day it is due, be paid to the contractor or deposited in an escrow account, whichever is applicable, with one or more banks or building and loan associations in the state selected by mutual agreement between the contractor and the public owner.

The escrow agreement is to incorporate certain terms, including a statement that the escrow agent shall hold the funds "until receipt of notice from the public owner and the contractor, or until receipt of an arbitration order or an order of the court of claims specifying the amount of the escrowed principal to be released and the person to whom it is to be released." R.C. 153.63(A)(2).

**{¶35}** If there is a disagreement as to the conditions under which money is payable under this section, the contractor's remedy lies in either division (B) or (C), depending on the applicable public owner. The contractor filed the petition to compel arbitration by citing division (B) of R.C. 153.63, which states:

> When the public owner, as defined in division (B) of section 2743.01 of the Revised Code, and the contractor disagree as to the conditions under which money is to be paid under this section, the parties shall apply for a decision by arbitration under the procedures of Chapter 2711. of the Revised Code. When an application is made, neither party shall initiate, and no court shall permit the maintenance of, an action in court for decision of the same issues sought to be determined in the arbitration application. The award made by the arbitrator may include the costs of arbitration. The arbitration shall be binding on all parties.

In identifying the type of public owner, R.C. 153.63(B) cites to R.C. 2743.01(B), which is the portion of a court of claims statute defining a political subdivision. R.C. 2743.01(B) defines a political subdivision as including a school district.

**{¶36}** This is compared to R.C. 153.63(C), which states: "When the public owner, as defined in division (A) of section 2743.01 of the Revised Code, and the contractor disagree as to the conditions under which money is to be paid under this section the contractor shall file an action in the court of claims." R.C. 153.63(C). Under this cited court of claims statute: "'State' means the state of Ohio, including, but not limited to, the general assembly, the supreme court, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state. 'State' does not include political subdivisions." R.C. 2743.01(A).

<u>ASSIGNMENTS OF ERROR ONE & TWO: THE PUBLIC OWNER</u>

**{¶37}** The school district's first and second assignments of error will be discussed together as they are based upon the same underlying argument.

"The trial court erred in ordering this dispute to arbitration by holding that R.C. 153.63(B) applies to this case."

"The trial court erred in issuing a final order of arbitration based on its findings of fact and conclusions of law, as its findings of fact and conclusions of law are against the manifest weight of the evidence."

**{¶38}** The school district urges us to read R.C. 153.63 in its entirety. When divisions (B) and (C) speak of the public owner, they are speaking of "money to be paid under this section," which requires us to read division (A) first. Division (A) deals with "money which is due from the public owner referred to in section 153.12 of the Revised Code under a contract entered into under this chapter or entered into under other applicable sections of the Revised Code for the construction * * * of a public improvement * * *." One of the applicable sections under which the contract was entered is R.C. 3318.10, which provides that any contract "shall be made in the name of the state and executed on its behalf by the president and treasurer of the school district board."

**{¶39}** As to "the public owner referred to in section 153.12," this latter section begins by referring to a "contract for the construction * * * of a public improvement made by the state, or any county, township, municipal corporation, school district, or

other political subdivision * * *." R.C. 153.12(A). It later discusses the amounts and time of payments "of any public improvements contract made by the state or any county, township, municipal corporation, school district, or other political subdivision * * *." *Id.*

**{¶40}** In the case before us, the construction contract here was "made by the state," not by the school district. *See* R.C. 3318.10; Contract Form at Preamble; Contract Form at Signature Line. The school district emphasizes it was merely the state's agent under the construction contract. *See id.* Accordingly, it has been held that a contractor cannot bring suit for breach of the construction contract against the school district; the state is the party from whom the contractor must seek compensation for breach of such contract. *Ingle-Barr, Inc. v. Scioto Valley Local School Dist. Bd.*, 193 Ohio App.3d 628, 2011-Ohio-2353, 953 N.E.2d 363, ¶ 10 (4th Dist.), citing *Ingle-Barr, Inc. v. E. Local School Dist. Bd.*, 4th Dist. Nos. 10CA808 and 10CA809, 2011-Ohio-584.

**{¶41}** It is therefore urged that when R.C. 153.63(A) speaks of money due from "the public owner referred to in section 153.12," it is speaking of the state. Whether to use division (B) or division (C) of R.C. 153.63 depends upon the public owner inserted into division (A). If the public owner inserted into division (A) is the state, then division (C) applies, which requires an action in the court of claims against the state (if this section is otherwise applicable).

**{¶42}** The school district notes that merely because a school district is a political subdivision as defined in R.C. 2743.01(B), which is used to describe the type of public owner to which R.C. 153.63(B) applies, does not mean the school district as an agent is "the public owner" involved in the contract under which money is due for purposes of R.C. 153.63 as a whole. This relates to the school district's contention that whether a school district can fit the definition of "a public owner" is irrelevant to the question of whether this school district is the "the public owner" referred to in R.C. 153.63(A), which is used to determine whether (B) or (C) is the applicable division.

**{¶43}** The school district protests the contractor's use of an unsigned sample escrow agreement, printed from the internet and said to be state-generated. This

was provided to the trial court to suggest arbitration is an anticipated potential event concerning this type of escrow account. The school district did not object to the introduction of the sample agreement below. In any event, the language in the sample agreement quoted by the contractor below is similar to that contained in R.C. 153.63(A)(2); for instance, it instructs the escrow agent to release funds if it receives an arbitration order or an order from a court with appropriate jurisdiction.

**{¶44}** The contractor responds that division (B) of R.C. 153.63, rather than division (C), is the applicable provision here as the school district is the public owner required by the construction contract to open and control the escrow account. The contractor believes it is only when the state is a party to the escrow agreement with the bank that division (C) would apply. The contractor disputes the school district was acting as an agent for the state as related to the escrow account, noting the court in *Ingle-Barr* did not indicate the dispute involved the release of escrowed funds.

**{¶45}** The contractor relies on this court's 1993 decision which rejected a school district's argument it was not the "owner" referred to R.C. 153.01. *Salem City School Dist. Bd. of Educ. v. Ultra Builders, Inc.*, 7th Dist. No. 92-C-48 (Jan. 29, 1993). This court upheld the trial court's decision staying the case pending arbitration under R.C. 153.63.

**{¶46}** The school district initially attempts to distinguish the *Ultra Builders* case by arguing it did not involve a construction contract entered by the state because the pertinent language in R.C. 3318.10, providing the contract shall be made in the name of the state and executed by the school district, was not effective until 2003. However, this statement, regarding prior statutory language, is incorrect. *See, e.g., Plumbers & Steamfitters Local Union 83 v. Union Local School Dist. Bd. of Educ.,* 7th Dist. No. 97-BA-40 (July 22, 1998), quoting R.C. 3318.10.

**{¶47}** The contract in *Ultra Builders* was entered in March 1991. The version of R.C. 3318.10 existing at the time *did* contain the language requiring the contract to be "made in the name of the state and executed on its behalf by the president and treasurer of the school district board." *See, e.g.,* 1996 H 748 (eff. 9-17-96); 1980 S

157 (eff. 8-1-80). (Before the commission was formed to administer the project for the state, it was previously the state board of education involved in the project).

**{¶48}** We do note, however, the version of Chapter 3318's definition statute existing at the time of the contract in *Ultra Builders* did not define the school district as "acting as an agency of state government, performing essential governmental functions of state government pursuant to sections 3318.01 and 3318.20 of the Revised Code." *See* R.C. 3318.01(D). This qualifying language was added in 1994. *See* 1994 H 715 (eff. 7-22-94).

**{¶49}** Regardless, our *Ultra Builders* case is distinguishable on other grounds. Initially, we note the contract in *Ultra Builders* contained a mandatory arbitration clause. There was a dispute over whether the contractor was in default in proceeding with the contractual arbitration under the contract's requirement of "reasonable time"; we left the timeliness question for the arbitrator and alternatively held arbitration was mandatory under R.C. 153.63.

**{¶50}** Without expressing an opinion on the *Ultra Builders* holding, we point out the court was faced with a different argument. Notably, due to issues with subcontractors, R.C. 153.63 was reached via the mechanic's lien statutes, one of which provided: "An owner referred to in section 153.01 shall place such detained funds in an escrow account as provided for under section 153.63 * * *." *See* former R.C. 1311.28, citing former R.C. 153.01.[5]

**{¶51}** The *Ultra Builders* decision did not undertake to ascertain who made the contract under R.C. 153.12 as directed by R.C. 153.63(A). The Salem City School District entered a contract to alter and improve *a football stadium*, not classroom facilities. *See* R.C. 3318.01(B) (defining classroom facilities), (C) (defining project). Thus, there is no indication R.C. 3318.10 and related statutes would have applied to the *Ultra Builders* contract.

---

[5] R.C. 1311.28 was thereafter amended. Effective April 10, 1991, the language "owner as referred to in section 153.01" was changed to "the public authority." At the same time, the phrase "as may be" was deleted from the clause which previously read: "to be released * * * to such persons as may be ordered by a court of competent jurisdiction or by agreement of the principal contractor and the subcontractor * * *."

**{¶52}** The contractor states the contractual promise to establish and maintain an escrow account was made by the school district, not the state. Yet, the construction contract, to which only the state is a party (made by the school district as its agent), was what created the obligations as to the escrow account. Such contract could be viewed as defining what actions would be taken on behalf of the state by its agent. Notably, the school district also controls the school district project construction fund into which state funds are placed. In addition, the school district is bound to the state under a separate agreement. *See, e.g.,* R.C. 3318.08; R.C. 3318.10.

**{¶53}** Under these statutes, the school district is specifically said to be "acting as an agency of state government, performing essential governmental functions of state government * * * ." R.C. 3318.01(D). The construction contract and its requirements were made in the name of the state and executed on its behalf by the school district. R.C. 3318.10. The school district is clearly the state's agent in regard to the obligations set forth in the construction contract. *See, e.g., Plumbers & Steamfitters,* 7th Dist. No. 97-BA-40 (as an agent for the state {a disclosed principal}, the school district is not liable for any contracts it makes on the state's behalf, and consequently, is not the real party in interest in litigation over the school district's compliance with R.C. 153.30 concerning construction bids; the state was a required party), citing R.C. 3318.01(D) and R.C. 3318.10. *See also Monarch Constr. Co. v. Ohio School Facilities Comm.*, 150 Ohio App.3d 134, 2002-Ohio-6281, 779 N.E.2d 844, ¶ 52 (10th Dist.) (when the commission approved the construction contract, it ratified the action of its agent, the school district).

**{¶54}** All actions made by the school district under the construction contract, including the entry into an escrow agreement and the controlling of the escrow account, are actions made in the school district's agency function. As aforementioned, if the public owner referred to in R.C. 153.63(A) and R.C. 153.12 is the state, then R.C. 153.62(C) requires the contractor to file an action in the court of claims when there is a disagreement as to the conditions under which money is to be paid under R.C. 153.63. Furthermore, R.C. 153.12 (B) provides that if a dispute

arises between the state and a contractor "concerning the terms of a public improvement contract let by the state or concerning a breach of the contract," then the contractor may bring an action in the court of claims.

{¶55} This court adopts the school district's arguments set forth above: the public owner referred to in R.C. 153.63(A) requires reference to R.C. 153.12 and R.C. 3318.10; the state is the party who made the public improvement contract; this is the public owner used to determine whether division (B) or division (C) applies; and the school district is merely acting as the state's agent. (Otherwise, we would have a situation where the school district is the state's agent for purposes of the construction contract but not for the escrow agreement, which was a requirement of the construction contract.)

{¶56} Finally, the construction contract explicitly names the court of claims as "the exclusive jurisdiction for an action or proceeding by the Contractor or the Contractor's surety for any money damages concerning any agreement or performance under the Contract Documents or in connection with the Project." Sec. 1.1.3.2. *See also* Sec. 1.1.3.1. (and, the local common pleas court is the exclusive jurisdiction for an injunction or declaratory judgment action "concerning any agreement or performance under the Contract Documents or in connection with the Project.").

{¶57} We hereby sustain the first assignment of error (and related arguments under the second assignment of error). The school district's remaining assignments of error will not be addressed as they are moot. The trial court's decision compelling arbitration under R.C. 153.63(B) is reversed and the case is remanded to the Trial Court with instructions to grant the school's district's motion to dismiss for lack of subject matter jurisdiction.


Waite, J., concurs.

DeGenaro, J., concurs.